# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANTUAN VALENTINO LITTLE,

                          Petitioner,

v.

WARDEN BRIAN FOSTER,

                          Respondent.

Case No. 16-CV-805-JPS

**ORDER**

Petitioner, Antuan Valentino Little ("Little"), was convicted of first-degree sexual assault of a child and exposing a child to harmful materials after a jury trial held in Milwaukee County Circuit Court. After being denied postconviction relief by the Wisconsin courts, he now seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2254. (Docket #1). After screening Little's petition and evaluating his requests to remove certain claims, *see* (Docket #12, #21, #34), two grounds for relief remain: (1) ineffective assistance of counsel arising from a failure to introduce evidence of the victim's prior sexual assault allegation against another man; and (2) denial of due process arising from the trial court's failure to order a new trial based on newly discovered evidence that the victim's father pressured her into testifying against Little at trial. The parties have now fully briefed their respective positions. For the reasons stated below, the Court finds that Little's petition is without merit and must be denied.

1. **STANDARD OF REVIEW**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas

relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law

means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the habeas petition must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the

evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations against the petitioner are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, however, an unreasonable factual determination means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

**2. BACKGROUND**

As noted above, Little was convicted of first-degree sexual assault of a child and exposing a child to harmful materials after a jury trial held in Milwaukee County Circuit Court on January 27–29, 2010. He was sentenced to eleven years in prison to be followed by six years of extended supervision.

The victim, identified as "J.B.," testified at Little's trial. She stated that in 2007, when she was only ten years old, Little forced her to rub his penis wrapped in a sandwich bag to the point of ejaculation. This occurred at some point between November 1, 2003 and August 30, 2005, when she and her mother lived with Little in Milwaukee. Little also made J.B. watch a pornographic video kept hidden under her mother's bed on at

least one occasion during the same time frame. These offenses occurred when Little was left alone with J.B. and her siblings while their mother was away at work during the day.

J.B. did not initially tell her mother about Little's sexual misconduct because she was afraid her mother would not believe her and she knew that her mother loved Little. Rather than tell her mother, J.B. first told her cousin in 2007 about the sexual misconduct. Her cousin then told her uncle who, in turn, told her biological father, Humberto Rangel ("Rangel"), who reported it to police in 2009, after J.B. came to live with him upon his release from jail.

J.B. first disclosed the sexual abuse by Little to police in June 2007 while they were investigating an alleged sexual assault by another man, Michael C., against her younger sister. When J.B. reported the incident to Milwaukee Sensitive Crimes Police Officer Karla Lehman ("Lehman"), she wrote a note imploring: "Please, please, please, please, please don't tell my mom," alongside a drawing of a frowning face with tears falling. (Docket #15-17 at 37). J.B. also drew a star on the note inside of which she drew a heart with the words, "I love my mother and my dad." *Id.* at 38. During her interview with Lehman, J.B. accused both Little and Michael C. of sexual assault.

Police referred J.B.'s 2007 allegations against Little and Michael C. to the district attorney. However, neither man was charged. The district attorney noted both that J.B. "had several inconsistencies in her story" and that J.B. had recanted her allegations against Little. J.B. admitted that she had intentionally lied to Lehman concerning Little's assaults because "she was angry with him." (Docket #15-9 at 25). J.B. also told her mother later in 2007 that she had lied and that Little had not abused her. J.B. recanted

to her mother because she did not want her mother to feel bad. As discussed further below, J.B. never recanted her allegations against Michael C. *See infra* Part 3.1.

As noted above, J.B. started living with Rangel in June 2009 after he was released from jail. Rangel took J.B. for a walk in early August and asked whether Little did anything to her as his brother (and her uncle) had reported. J.B. turned red and did not provide details but confirmed that Little had sexually abused her. Rangel reported this to police and took J.B. to the police station a few days later. Rangel told police that he wanted "those guys that molested his daughter put in jail." (Docket #15-9 at 28).

Lehman interviewed J.B. on August 19, 2009, at Rangel's urging. At trial, Lehman described J.B.'s demeanor and the details of her account as being similar to her 2007 interview and to her trial testimony, which took place the day before Lehman testified. Little's theory of defense at trial was that J.B. lied so she could live with her biological father, rather than with Little and her mother.

On direct review, Little argued that his trial attorney was ineffective for not introducing evidence under Wis. Stat. §§ 971.31(11) and 972.11(2)(b)(3) that J.B. falsely accused another man of sexual assault. This was the same man, Michael C., who was investigated for sexually assaulting her sister. The trial court summarily denied relief because Little made an insufficient showing that J.B.'s sexual assault allegation against Michael C. was false.[1]

---

[1] In Wisconsin, postconviction relief may be sought simultaneously with a direct appeal. Hence, the trial court first ruled on this claim before it reached the Court of Appeals. *See* (Docket #15-21).

The Wisconsin Court of Appeals agreed in a per curiam decision issued January 3, 2013. The court, applying *State v. Ringer*, 785 N.W.2d 448, 460 (Wis. 2010), held that merely showing that Michael C. would deny any wrongdoing and was not charged did not sufficiently allege that J.B.'s 2007 sexual assault allegation against him was untrue. Without more, the court held, "no reasonable jury would be able to conclude that the prior allegations were, in fact, false." (Docket #15-2 at 3). The Wisconsin Supreme Court denied Little's petition for review June 12, 2013.

On collateral review, Little moved for a new trial on the ground that J.B.'s father, Rangel, admitted that he pressured her to testify at trial against her wishes. Little presented an affidavit from Rangel stating that, because he believed J.B.'s allegations against Little, he pressured her to testify to ensure Little was convicted. The trial court denied the motion on April 30, 2014, after holding that there was nothing in Rangel's uncorroborated affidavit to support the conclusion that J.B. lied at trial or that there was a reasonable probability of a different verdict had Rangel testified that he pressured his daughter to testify. The Wisconsin Court of Appeals affirmed in a decision issued September 22, 2015, finding that evidence of Rangel's pressuring J.B. to testify against Little did not rise to the level of a due process violation and Little failed to prove a reasonable probability of a different outcome. The Wisconsin Supreme Court denied Little's petition for review on January 7, 2016.

Little filed this habeas corpus petition on June 24, 2016. Little renewed his claims that trial counsel was ineffective for not introducing evidence of J.B.'s supposed untruthful allegation of sexual assault against Michael C., and that he was denied due process when the state courts

would not grant him a new trial to introduce evidence that J.B.'s father pressured her to testify against Little.[2]

3. ANALYSIS

    3.1    **Ineffective Assistance of Counsel**

Little theorizes that his lawyer was constitutionally ineffective for failing to seek introduction of testimony from Michael C. regarding J.B.'s allegedly untruthful allegations of sexual assault against him. Counsel is afforded deference in making strategic litigation decisions. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). In order to prove ineffective assistance of counsel, the movant must show that counsel's performance was deficient and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Moreover, it must be remembered that the Court's review is cabined by the deference it must pay to the Wisconsin Court of Appeals' decision on the claim. *Knowles*, 556 U.S. at 123. Under the AEDPA, "establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a tall task, and 'only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009) (quoting *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009)).

Because Little's underlying claim has no merit, his counsel cannot have been ineffective for failing to raise it. *See Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013). Little has not shown that the Wisconsin Court of Appeals erred in concluding that Michael C.'s testimony was inadmissible

---

[2]Little also presented other unexhausted claims in his petition on which he was not permitted to proceed. *See* (Docket #34). Further, Little attempted to add several claims to his petition, but these were not previously exhausted and he abandoned them. *See* (Docket #31).

under Wisconsin's rape shield law, Wis. Stat. § 972.11(2)(b). The Court of Appeals reasoned as follows:

> Little first argues that his lawyer ineffectively represented him because his lawyer did not seek admission of evidence that Jasmine B. previously made what he characterizes as untruthful allegations that another man, Michael C., had sexually assaulted her. "'[I]n order to admit evidence of alleged prior untruthful allegations of sexual assault'. . .the circuit court must first conclude from the proffered evidence that a jury could reasonably find that the complainant made prior untruthful allegations of sexual assault." *State v. Ringer*, 2010 WI 69, ¶31, 326 Wis. 2d 351, 785 N.W.2d 448 (citation omitted). The fact that the alleged perpetrator consistently denies an allegation is not sufficient to establish that the prior allegation was untruthful. *Id.*, ¶39. Similarly, the fact that an alleged perpetrator was not prosecuted does not establish that a prior allegation was untruthful because a prosecutor has "'broad discretion in determining whether to charge an accused.'" *Id.*, ¶40 (citation omitted).
>
> According to an incident report by the Milwaukee Police, Jasmine B. told the police that she was sexually assaulted by Michael C. Ten years old at the time she reported the offenses, Jasmine B. provided a graphic account of Michael C.'s assaults six years earlier, which occurred when she was only four years old. Jasmine B. has consistently maintained that Michael C. assaulted her, although she has at times been unwilling to talk about the assaults. Little contends that the fact that Michael C. was not prosecuted undermines Jasmine B.'s allegations, particularly because the prosecutor noted that there were some inconsistencies in her accounts of the assaults. *Ringer* squarely rejected this line of argument. *See id.*, ¶40 (non-prosecution of an alleged offense does not establish that a prior allegation was untruthful because a prosecutor has broad discretion in determining whether to charge). Stated differently, "[t]he intrinsic veracity of the complainant's [prior] accusations should not be confused with the State's

> inability to meet its burden of proof for a criminal conviction." *See People v. Alexander*, 452 N.E.2d 591, 595 (Ill. App. 1 Dist. 1983). The circuit court properly denied Little's postconviction argument that the circuit court should have admitted evidence that Jasmine B. made what he characterizes as prior untruthful allegations of sexual assault against another man on the grounds that no reasonable jury would be able to conclude that the prior allegations were, in fact, false.

(Docket #15-2 at 2–3).

The Wisconsin appellate court decision was not erroneous. Little complains that it was impossible for him to show that J.B. was untruthful in her allegations against Michael C., as they rested "solely on the credibility of the complainant" and there was no physical evidence or any witness to corroborate her statements. (Docket #20 at 6). In Little's view, the Wisconsin courts held him to too high a standard—they required him to actually prove that J.B.'s allegations were false, rather than simply consider whether a reasonable jury could so find, and they required him to produce independent evidence to do so. *See id.* at 6–7. Little believes that Michael C.'s denial of wrongdoing, coupled with the prosecutor's decision not to institute charges against him because of inconsistencies in J.B.'s story, could lead a reasonable jury to disbelieve J.B.'s accusations against Michael C. *Id.* at 7.

At the outset, Little misconstrues the state court's application of the law. The Wisconsin Court of Appeals clearly acknowledged that the relevant standard was whether a reasonable jury could find J.B.'s accusations false, not whether Little had proven them to be demonstrably false. *See* (Docket #15-2 at 2). The real question, then, is whether the court unreasonably determined that this standard was not met.

There existed more than sufficient evidence for the Wisconsin Court of Appeals to reach its conclusion. First, the mere fact that Michael C. would deny committing the prior assault is insignificant, given that alleged perpetrators often deny wrongdoing. *Ringer*, 785 N.W.2d at 460. Second, J.B. has never recanted her 2007 allegation against Michael C. *See id.* ("The fact that she has never recanted her allegations weighs against a jury's finding that the allegations were untruthful."). In fact, she repeated it to others in subsequent years, although she was at times reluctant to discuss the matter. Third, while charges were not brought against Michael C., this does not undermine J.B.'s accusations. As observed in *Ringer*, prosecutorial decisions are influenced by many considerations beyond the truthfulness of the accusations. *Id.* The standard of proof in a criminal trial is high, and the prospect of not meeting it was raised by inconsistencies in J.B.'s telling of the assaults. Even so, J.B. has never recanted her allegations against Michael C., and both her mother and her biological father, Rangel, believed that she was assaulted by Michael C.

Little offers only his competing view of the facts, which he deems to raise the possibility that a jury could find in his favor. *See* (Docket #29 at 2). He was not required to show irrefutably that J.B. lied, but his argument does not support even the lesser conclusion that it was more likely than not that she lied. *See Ringer*, 785 N.W.2d at 458. Little's own belief that J.B. lacked credibility is simply inadequate under Wisconsin law to support the admissibility of Michael C.'s testimony.

The Wisconsin Court of Appeals correctly held that Little failed to show that "a jury, acting reasonably, could find that it is more likely than not that [J.B.] made prior untruthful allegations of sexual assault." *Id.* Had defense counsel tried to introduce this evidence at trial, it would have

been excluded under Wisconsin's rape shield law. *State v. Moats*, 457 N.W.2d 299, 315 (Wis. 1990). Because this Court agrees with the state courts that Michael C.'s testimony would be inadmissible under Wisconsin's rape shield law, it also concurs that trial counsel was not ineffective for failing to seek to introduce it.[3]

### 3.2    Due Process Violation

Little's other ground for relief is based primarily on an affidavit he obtained from J.B.'s father, Rangel. Rangel averred that he pressured J.B. to testify against Little at trial. Rangel's affidavit states, in relevant part, that he "believed J.B.'s allegations against Mr. Little, so [he] made sure that Little, got charged with sexual assault," that "J.B. was unwilling to testify against [Little]," and that "[o]n Jan 28th, 2010 [Rangel] coerced, and persuaded J.B. into testifying against Little." (Docket #15-9 at 36).

Little believes that this newly discovered evidence shows that J.B.'s statements were coerced and therefore false, and that this undermines the case against him when considered with other evidence, including J.B.'s recantation, her inconsistent statements about the assaults, and photographs introduced at sentencing of J.B. posing with Little and

---

[3]Little complains that he was denied a hearing in state court during which he could have questioned counsel about his failure to inquire with Michael C. about the sexual assault allegations. (Docket #20 at 9). Because this Court, like the state court, finds that the underlying claim is meritless, counsel's reasons for his decision not to question Michael C. on this topic are immaterial. Additionally, to the extent Little believes that testimony about the allegations against Michael C. was admitted at trial, prejudicing him, *see id.*; (Docket #39 at 4–6), the record citation he provides does not support his position. In the portion of the trial transcript Little cites, the witness testified that J.B. had made sexual assault allegations against another person, but their truth or falsity was never discussed. *See* (Docket #15-17 at 62–63). The testimony was offered merely to give context to the 2007 investigation. There is no suggestion that the jury believed these other allegations or that they had any effect on Little's case.

Michael C. from 2009, apparently showing that she liked the men. As a result, he contends that the trial court wrongly denied him a new trial to present Rangel's testimony alongside this other evidence. (Docket #20 at 10–15).

Both the Wisconsin trial and appellate courts found that Rangel's testimony did not raise a reasonable probability that the outcome of Little's trial would have been different had the testimony been introduced. The Wisconsin Court of Appeals' decision on the matter reads, in relevant part:

> To prevail on a claim of newly discovered evidence, the defendant must show, "by clear and convincing evidence that '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Love*, 2005 WI 116, ¶43, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted). If the defendant satisfactorily makes those showings, the circuit court then "'must determine whether a reasonable probability exists that a different result would be reached in a trial.'" *See id.*, ¶44 (citation omitted).
>
> The circuit court originally determined that Little did not sufficiently allege a reasonable probability of a different result; its order denying reconsideration for a second time effectively affirmed that ruling. We agree with the circuit court's conclusions.
>
> "A reasonable probability of a different outcome exists if 'there is a reasonable probability that a jury, looking at both the [old evidence] and the [new evidence], would have a reasonable doubt as to the defendant's guilt.'" *Id.*, ¶44 (citation omitted; bracketed sections in *Love*). H.R.'s affidavit indicates only that J.B. was an unwilling witness; there is no suggestion that she was an untruthful one. Absent other factual allegations, the simple fact that H.R. had to coerce or persuade J.B. to testify does not in and of itself make her

testimony any less reliable or credible than if she were a fully willing witness. Further, Little does not demonstrate how this new evidence of J.B.'s unwillingness to testify and her father's coercion to do so, when added to the old evidence that was presented to the jury during trial, would create reasonable doubt as to his guilt.

Nor does H.R.'s persuasion or coercion rise to the level of a due process violation. Little tries to analogize his "involuntary testimony" case to cases involving convictions based on involuntary confessions. *See Jackson v. Denno*, 378 U.S. 368, 376 (1964) ("[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession[.]"). But *Jackson* deals with the conviction of an accused based on the accused's own involuntary confession. At issue in such a case is more than just due process-there is also a concern about the defendant's right against self-incrimination. *See id.* at 408 (Black, J., dissenting in part and concurring in part).

The concerns about compelled testimony are necessarily different. In fact, "compulsory process for securing favorable witnesses" and compelling their attendance for the defendant's case is itself a necessary component of due process. *See State v. Schaefer*, 2008 WI 25, ¶63, 308 Wis. 2d 279, 746 N.W.2d 457. Thus, in the absence of other facts, the mere fact that a witness's testimony has been coerced, in the sense that the witness ultimately testified despite her desire not to do so, does not cause us due process concerns.

(Docket #15-7 at 4–6) (footnotes omitted).

The state court's conclusions were not unreasonable, and certainly not contrary to Supreme Court precedent. "As a general rule, newly discovered evidence that bears only on the question of guilt or innocence is not reviewable by a federal court on a motion for habeas corpus relief." *Coogan v. McCaughtry*, 958 F.2d 793, 801 (7th Cir. 1992). Nonetheless, "in some situations newly discovered evidence is so compelling that it would

be a violation of the fundamental fairness embodied in the Due Process Clause not to afford a defendant a new trial in which the evidence could be considered." *Id.* (internal quotation marks and citations omitted); *Johnson v. Bett*, 349 F.3d 1030, 1038 (7th Cir. 2003). As the Supreme Court has explained,

> [c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact.

*Herrera v. Collins*, 506 U.S. 390, 400 (1993).

Little argues that the state courts denied him due process because he was entitled to put on evidence that Rangel pressured J.B. to testify. He believes that Rangel's testimony would be especially credible, given that J.B.'s father would have little incentive to testify on behalf of the man accused of sexually assaulting her. (Docket #20 at 12). However, as the Wisconsin Court of Appeals rightly noted, Rangel's testimony raised no inference that J.B.'s trial testimony was untruthful. At worst, Rangel explained that J.B. was not happy about testifying and did not want to do so.

But an unwilling witness cannot be presumed to be an untruthful one. J.B. swore to tell the truth at trial, and Rangel does not affirmatively state that she violated that oath. Thus, Rangel's affidavit does not move the evidentiary mark at all, much less in Little's favor. Due process is not offended when a witness testifies truthfully despite her inclination not do so. *See Samuel v. Frank*, 525 F.3d 566, 569 (7th Cir. 2008) (holding that due

be a violation of the fundamental fairness embodied in the Due Process Clause not to afford a defendant a new trial in which the evidence could be considered." *Id.* (internal quotation marks and citations omitted); *Johnson v. Bett*, 349 F.3d 1030, 1038 (7th Cir. 2003). As the Supreme Court has explained,

> [c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact.

*Herrera v. Collins*, 506 U.S. 390, 400 (1993).

Little argues that the state courts denied him due process because he was entitled to put on evidence that Rangel pressured J.B. to testify. He believes that Rangel's testimony would be especially credible, given that J.B.'s father would have little incentive to testify on behalf of the man accused of sexually assaulting her. (Docket #20 at 12). However, as the Wisconsin Court of Appeals rightly noted, Rangel's testimony raised no inference that J.B.'s trial testimony was untruthful. At worst, Rangel explained that J.B. was not happy about testifying and did not want to do so.

But an unwilling witness cannot be presumed to be an untruthful one. J.B. swore to tell the truth at trial, and Rangel does not affirmatively state that she violated that oath. Thus, Rangel's affidavit does not move the evidentiary mark at all, much less in Little's favor. Due process is not offended when a witness testifies truthfully despite her inclination not do so. *See Samuel v. Frank*, 525 F.3d 566, 569 (7th Cir. 2008) (holding that due

process is not implicated unless a coerced statement is "completely unreliable"); *State v. Samuel*, 643 N.W.2d 423, 431–32 (Wis. 2002) (holding that a witness' coerced statement is unreliable if, for instance, it is coached or induced by threat).[4]

Little's challenge goes further, however. He maintains that the state court failed to appreciate the full body of evidence favorable to him, including not only Rangel's coercion but also J.B.'s recantation, her inconsistent statements about the assaults, and the 2009 photographs. *Id.* at 11. According to Little, the 2007 recantation "was the last free and un-coerced statement made by J.B." *Id.* at 12. Moreover, the appellate court did not, in Little's opinion, properly consider the photographs as evidence of J.B.'s goodwill toward Little, which was purportedly poisoned a few weeks later by Rangel's coercion. *Id.* Finally, says Little, the state court did not give due weight to J.B.'s inconsistent statements about the assaults to law enforcement, which further undermined her credibility. *Id.*

These considerations, taken together, convince Little that J.B.'s testimony was not the result of her own free will and was, in fact, false. *See id.* at 15. The Court does not agree. The key to the legal standard here is that the new evidence have some probative value favoring the defendant such that it, coupled with the existing evidence, raises a reasonable probability of a different result at trial. *See State v. Love*, 700 N.W.2d 62, 77 (Wis. 2005). Because Rangel's affidavit carried *de minimis* probative value on the question of J.B.'s truthfulness, there was no cause to consider whether the "old" evidence was bolstered by the addition of

---

[4]Little contends that Rangel would have averred that his daughter lied on the stand but did not do so out of "forgetfulness." (Docket #39 at 13). Little cannot unilaterally rewrite the record nor reconfigure Rangel's sworn statements years after the fact.

the affidavit. Put differently, a request for a new trial based on newly discovered evidence cannot involve merely a second look at the old evidence. *See State v. Armstrong*, 683 N.W.2d 93, 2004 WL 1171676, at *9 (Wis. Ct. App. 2004), *abrogated on other grounds*, 700 N.W.2d 98 (Wis. 2005). Rather, such a request is largely reliant upon the new evidence, since that new evidence must make some difference to the outcome when considered alongside the old. Consequently, Little's motion for new trial was not wrongly denied.

More importantly, Little has directed this Court to no decision of the Supreme Court that countermands the state court's decision. Mere error in the appellate court's application of the newly discovered evidence standard is not actionable on federal habeas review. *See Moore v. Casperson*, 345 F.3d 474, 491 (7th Cir. 2003). Under the AEDPA, Little had to show that the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). He has not done so. Thus, no relief is available to him in this Court.

## 4. CONCLUSION

For the reasons stated above, the Court finds that Little's asserted grounds for relief are without merit. The petition must, therefore, be dismissed.[5]

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

---

[5]As noted above and explained at length in an earlier order, Little briefed a third argument to this Court: that the evidence, considered holistically, was too unreliable and infected with coercion and inconsistency to support a conviction. (Docket #20 at 15–17). It was not clear until Little filed his reply, (Docket #39), that he was proffering an insufficiency-of-the-evidence theory under *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* holds that due process is violated if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt on the evidence presented. *Id.* at 318–19. The reviewing court may set aside the verdict on the ground of insufficient evidence only if *no* rational trier of fact could have agreed. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Little asked the Court to dismiss this third ground for relief, and it did so. (Docket #16, #21). Five months afterward, he asked the Court to walk back its order, stating that he wanted to pursue a claim that his conviction "rest[ed] entirely on coerced, false, involuntary, [and] inconsistent testimony[.]" (Docket #1 at 8); (Docket #33). He did not identify it as a *Jackson*-style claim in that motion. *See* (Docket #33).

The Court did not permit this claim to go forward, as Little himself had asked the Court to dismiss it. (Docket #34 at 2). Further, the record demonstrates that no such claim was ever presented to the Wisconsin courts in the first instance. *See id.* at 4 n.1. Because the claim remains unexhausted, the Court cannot consider it, particularly since Little makes no effort whatsoever to explain why he failed to exhaust the claim. *See* 28 U.S.C. § 2254(b)(1)(A); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001).

manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court's discussion above makes clear, in light of the facts presented and Little's rehashed arguments from his state proceedings, no reasonable jurists could debate whether Petitioner's petition is without merit. As a consequence, the Court is compelled to deny him a certificate of appealability.

Finally, the Court closes with some information about the actions that Little may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within thirty days of the entry of judgment. Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *Id.* 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The Court cannot extend this deadline. Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *Id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of November, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge